Maura J. Wogan (MW-9589)
Marisa Sarig (MS-3786)
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue
New York, New York 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175

*Attorneys for Defendants*
*John Doe, writing under the name John David California,*
*Windupbird Publishing, Ltd., Nicotext A.B and ABP, Inc. d/b/a*
*SCB Distributors, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

J.D. SALINGER, individually and as TRUSTEE
OF THE J.D. SALINGER LITERARY TRUST,           :    09 Civ. 05095 (DAB)

                Plaintiff,

                -against-

JOHN DOE, writing under the name JOHN DAVID
CALIFORNIA; WINDUPBIRD PUBLISHING
LTD; NICOTEXT A.B.; and ABP, INC. d/b/a SCB
DISTRIBUTORS, INC.,

                Defendants.

----------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S *IN LIMINE* MOTION

Defendants John Doe, writing under the name John David California, Windupbird Publishing, Ltd., Nicotext A.B, and ABP, Inc. d/b/a SCB Distributors, Inc (collectively, "Defendants") submit this memorandum of law in opposition to the motion denominated as an *in limine* motion ("*In Limine* Motion") of plaintiff J.D. Salinger, individually and as Trustee of the J.D. Salinger Literary Trust ("Plaintiff" or "Salinger").[1]

---

[1] The *In Limine* Motion was not served on Defendants until June 17, 2009, the return date of the preliminary injunction motion, and was filed with the Court on June 19, 2009.

## PRELIMINARY STATEMENT

The *In Limine* Motion seeks to strike from the record in this case certain amicus briefs and expert declarations, as well as a New York Times editorial, all submitted by Defendants in opposition to Plaintiff's motion for a preliminary injunction prohibiting the publication, marketing and distribution of Fredrik Colting's novel *60 Years Later, Coming Through the Rye* ("*60 Years*"). Defendants' defense to Plaintiff's copyright claim (and a basis for their opposition to the preliminary injunction) is that *60 Years*, which provides critical commentary on Salinger's *The Catcher in the Rye* ("*Catcher*") and character Holden Caulfield, constitutes fair use. Defendants also argue that an injunction, in this context, is a drastic and unnecessary remedy that would constitute a prior restraint. The exhibits and declarations which Plaintiff seeks to strike from the record are directly relevant both to Defendants' fair use defense and their argument that an injunction would constitute an unconstitutional prior restraint. The evidence Plaintiff seeks to strike from the record is properly before this Court and should be considered by this Court in ruling on Plaintiff's request that the Court ban *60 Years*.

## ARGUMENT

1. **This Court Can Take Judicial Notice of the Amicus Briefs Filed in *Suntrust Bank v. Houghton Mifflin Company* Case and The New York Times Editorial Questioning the Issuance of an Injunction in that Case.**

By attaching certain of the amicus briefs filed in the *Suntrust Bank v. Houghton Mifflin Company* case ("*The Wind Done Gone* Case"),[2] Defendants properly asked this Court to take

---

[2] In 2001, Suntrust Bank (the trustee of the Mitchell Trust which holds the copyright in *Gone With the Wind*) ("Suntrust") brought a copyright claim against Houghton Mifflin Company, the publisher of *The Wind Done Gone*, written by Alice Randall. In that case, the district court, after a hearing, granted Suntrust's motion and enjoined publication of the allegedly infringing book. *Suntrust Bank v. Houghton Mifflin Co.*, 136 F. Supp. 2d 1357 (N.D. Ga. 2001). The Eleventh Circuit ordered the injunction vacated at oral argument, 252 F.3d 1165 (11th Cir. 2001), and ultimately issued a comprehensive opinion vacating the district court's judgment, 268 F.3d 1257, 1277 (11th Cir. 2001), on the grounds that the injunction was an unconstitutional prior restraint.

judicial notice of those filings for the express purpose of recognizing a significant public interest at issue in this case. The amicus briefs submitted make clear that the issuance of an injunction in this case – just like the issuance of an injunction in *The Wind Done Gone* Case – raises significant concerns for the media and First Amendment advocates who submitted those briefs. Declaration of Edward H. Rosenthal, dated June 15, 2009 (the "Rosenthal Decl."), ¶¶ 2-7.

In the amicus briefs attached as Exhibits B, C and D to the Rosenthal Decl., numerous interested parties, including The New York Times Company, Dow Jones & Company, Inc., The Tribune Company, Microsoft Corporation, Pen American Center American Booksellers Foundation for Freedom of Expression and The National Coalition Against Censorship (the "Amici") argued, *inter alia*, that "[n]o matter how the ultimate issue of copyright infringement is decided, a federal court must be extremely leery about issuing an order that restrains the publication of a book, as opposed to some other item of commerce protected by the trademark or copyright laws." Rosenthal Decl., Ex. D, p. 1. "Such injunctive relief [to prevent copyright infringement] halting the publication of a book, film, news article, or other work that contains independently expressive speech threatens First Amendment interests." *Id.*, Ex. B, p. 6. Those concerns apply equally here where Plaintiff asks this Court to enjoin the publication of independently expressive speech in the form of a novel.

Courts routinely take judicial notice of filings in other courts, including amicus briefs, to establish the fact of such filings. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 779 (2d Cir. 1991); *see also Enterprise Mortg. Acceptance Co., LLC, Secs. Litig. v. Enterprise Mortg. Acceptance Co.*, 391 F.3d 401, 410 n.8 (2d. Cir. 2004) (taking judicial notice of an amicus brief filed in an unrelated case involving a similar issue).

Appellate Procedure Rule 29(a) and the cases cited by Plaintiff in his *In Limine* Motion, which govern the submission of amicus-curiae submitted in support of a particular position in a specific case, are not applicable here.

Similarly, the editorial published in The New York Times on May 1, 2001 was submitted by the Defendants to this Court to illustrate the wide-spread reaction of the media and press concerned with the implication of the injunction issued in *The Wind Done Gone* Case for First Amendment interests: "Even if higher courts ultimately agree that 'The Wind Done Gone' is an unauthorized sequel that falls outside the recognized exception for parody under copyright law, the correct remedy is monetary damages, not shutting down presses in advance of publication." Rosenthal Decl., Ex. A, p. 2. An injunction banning a book was described as "a radical remedy" and "damag[ing] to free speech each day that it stands." That same public interest, as expressed in the editorial, should be considered by this Court in connection with Plaintiff's motion for a preliminary injunction. *See Standard & Poor's Corp., Inc. v. Commodity Exch., Inc.*, 683 F.2d 704, 711 (2d Cir. 1982) (noting that harm to public interests may be considered in determining whether to issue an injunction).

Plaintiff's argument that Defendants' submissions are an "attempt to intimidate the Court" is insulting to the Court and to Defendants. Rather, Defendants' intent was to provide the Court with the benefit of those amicus briefs and the editorial to the extent that they identified and addressed a valid and significant public interest. Accordingly, Exhibits A, B, C and D and paragraph 2 through 7 of the Rosenthal Decl. are properly before this Court and should not be stricken from the record on Plaintiff's motion for a preliminary injunction.

2. **The Expert Declarations Submitted by Defendants Are Properly Before this Court and Should Be Considered By the Court on Plaintiff's Motion for a Preliminary Injunction**

   A. **Professor Robert Spoo Offers Admissible Expert Testimony that *60 Years* Constitutes Commentary and Critique of *Catcher***

The expert testimony of Robert Spoo is not submitted in support of Defendants' position that *60 Years* is not substantially similar to *Catcher*. Rather, Professor Spoo opines that *60 Years* is literary criticism and, as such, comments on *Catcher* and Holden Caulfield. After reviewing the two works, Professor Spoo concludes:

> As the foregoing examples demonstrate, *60 Years* acts in many ways as a sustained commentary on and critique of *Catcher*, revisiting and analyzing the attitudes and assumptions of the teenaged Holden Caulfield. In this respect, *60 Years* is similar to a work of literary criticism, with the difference that instead of linear, expository prose, *60 Years* makes use of non-linear, discontinuous, highly imaginative language to perform its analyses.

Declaration of Robert Spoo, dated June 15, 2009 (the "Spoo Decl."), ¶ 7. Such expert testimony is admissible in this copyright case where Defendants have raised a defense of fair use. *See, e.g., Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 155 F. Supp. 2d 1, 46-48 (S.D.N.Y. 2001) (considering expert and other declarations in fair use analysis); *College Entrance Examination Bd. v. Pataki*, 889 F. Supp. 554, 571-75 (N.D.N.Y. 1995) (considering expert testimony in fair use analysis); *see also Suntrust Bank*, 136 F. Supp. 2d at 1373-83 (considering various expert affidavits on fair use factors).

As this Court has recognized, the initial issue presented by Plaintiff's motion for a preliminary injunction is whether *60 Years* is a "parody" in the legal sense of that word, *i.e.*, is *60 Years* commenting, at least in part, on *Catcher* and Holden Caulfield. *See Bourne Co. v. Twentieth Century Fox Film Corp.*, 602 F. Supp. 2d 499, 504 (S.D.N.Y. 2009). At the hearing, the Court indicated that it was having trouble "seeing" the commentary. Transcript from hearing on Plaintiff's motion for preliminary injunction, June 17, 2009, p. 42. For that reason, it is

important that the Court have the benefit of Professor Spoo's expert opinion and the testimony should not be stricken from the record.[3]

### B. There is No Basis to Strike the Opinions of Sara Nelson and Lukas Ortiz that *60 Years* Will Have No Impact on the Market for *Catcher*

Sara Nelson and Lukas Ortiz both opined that *60 Years* would have no impact on the market for *Catcher*. Both testified that, in their opinion, sales of, and publicity concerning, *60 Years* would increase interest in and sales of *Catcher*. Both also testified that the sale of an authorized sequel to *Catcher* or one written by Salinger would not be adversely impacted by the presence of *60 Years* in the market. Declaration of Sara Nelson, dated June 15, 2009, ¶ 5; Declaration of Lukas Ortiz, Dated June 14, 2009, ¶¶ 5-7.

Plaintiff's motion to strike the Nelson and the Ortiz Declarations does not even set forth a basis for such relief. Instead, the motion simply attacks Ms. Nelson's and Mr. Ortiz' qualifications, arguing that Ms. Nelson is only a reporter (a ludicrous attack given Ms. Nelson's extensive resume including years as editor-in-chief of *Publishers Weekly* which may be the most significant publishing industry trade publication) and Mr. Ortiz works for a "small" literary agency. Plaintiff's arguments, irrelevant on a motion to strike, would be more appropriate in reply papers on his motion for a preliminary injunction; however, this Court expressly refused Plaintiff's request that he be permitted to put in a reply on his motion.

---

[3] Similarly the Court also should consider the expert testimony of Martha Woodmansee, a professor of English and American Literature who describes *60 Years* as "meta-commentary" "cast in an innovative 'post-modern' form." Declaration of Martha Woodmansee, dated June 15, 2009, ¶ 9. Also significant is the testimony of Fredrik Colting, the author of *60 Years* who describes, at length, his critical purpose in writing the novel. Declaration of Fredrik Colting, dated June 14, 2009. *See Bourne*, 602 F.2d 507-08 (Court should give "weight to an artist's own explanation of their creative rationale when conducting fair use analysis..."). *See also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583 (1994) (considering artist's choice of parody in fair use analysis).

The fact remains that Salinger himself has submitted evidence that he has not written a sequel to *Catcher* and that he has no intention of writing one in the future or authorizing anyone else to do so. Affidavit of Phyllis Westberg, sworn to June 1, 2009, ¶ 3. Furthermore, the Plaintiff's papers contain no evidence of any potential economic impact on sales of *Catcher* or any authorized sequel or other derivative work. Given the significance of this case, and the weight given by the courts to the fourth factor in the fair use analysis, this Court should not ignore strong evidence that publication of *60 Years* will not cause any cognizable market harm to *Catcher* or any hypothetical sequels. *Campbell*, 510 U.S. at 591-93 (the relevant harm in fair use analysis is market substitution); *Consumers Union of U.S., Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1051 (2d Cir. 1993) (the possibility that a parody, by virtue of its critical content, might cause some harm to the market for the original is not relevant).

## CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiff's motion to strike the amicus briefs and any exhibits or declarations submitted by Defendants in opposition to Plaintiff's motion for a preliminary injunction.

Dated: New York, New York
June 22, 2009

Respectfully submitted,

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: *[signature]*
Maura J. Wogan (MW-9589)
Marisa Sarig (MS-3786)

488 Madison Avenue
New York, New York 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175

*Attorneys for Defendants
John Doe, writing under the name John David
California, Windupbird Publishing, Ltd.,
Nicotext A.B and ABP, Inc. d/b/a
SCB Distributors, Inc.*